UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Justin Curran,

                      Petitioner,                    19CV4196 (CS)(LMS)

       - against -

William F. Keyser,                                         **ORDER**

                      Respondent.

**Lisa Margaret Smith, U.S.M.J.**

    On May 6, 2019, Petitioner Justin Curran, proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a). Docket # 2 ("Petition").[1] Following a jury trial, Petitioner was convicted of three counts of murder in the second degree, one count of burglary in the first degree, one count of robbery in the first degree, and one count of grand larceny in the fourth degree; he is currently serving an aggregate prison term of 25 years to life. The Petition states four grounds for relief: (1) the prosecution failed to prove its case beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) Petitioner was deprived of the due process right to a fair trial when, over objection, the court allowed in evidence that before the murder, Petitioner allegedly assaulted the mother of his children, even though that was irrelevant and prejudicial; (3) Petitioner was deprived of the due process right to a fair trial when, over objection, the court allowed in a graphic photograph of the victim; and (4) Petitioner was

---

[1] Petitioner both signed and placed the Petition in the prison mailing system on May 6, 2019, see Petition at 14, and under the prison mailbox rule, this constitutes the date of filing. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (habeas petition is deemed filed as of the date it was given to prison officials for mailing).

1

deprived of the due process right to a fair trial when, over objection, the court delivered a flight charge and thus invited the jury to infer consciousness of guilt. See id. at 6-13.

Pending before the Court is Petitioner's motion to stay his habeas proceeding and hold it in abeyance while he exhausts a new claim of ineffective assistance of counsel during his trial. See Docket # 21 ("Stay Motion")[2]; 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]"). On November 15, 2019, Petitioner filed a N.Y. C.P.L. § 440.10 motion, arguing that Petitioner was denied the effective assistance of counsel because his attorney (1) failed to object to the DNA evidence presented in his case obtained through the Forensic Statistical Tool ("FST"), and (2) failed to request a pre-trial Frye hearing (Frye v. United States, 293 F. 1013 (D.C. Cir. 1923)[3]) to determine the reliability of the FST. See Stay Motion.[4]

---

[2] Although Petitioner states that he wishes to exhaust a claim that "DNA evidence created by the Forensic Statistical Tool, method, could have (and probably would have) been found to be unreliable after a Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) hearing," Stay Motion at 1 (citing People v. Thompson, 65 Misc. 3d 1206(A) (Sup. Ct. N.Y. Co. 2019)), his N.Y. C.P.L. § 440.10 motion ("440.10 Motion"), a copy of which is attached to the Stay Motion, points out his trial counsel's failure to object to the DNA analysis used in his case—"no one objected to this as defense counsel was 'missing in action' during the course of the trial"—and argues that "[t]here is no showing in the record of an appropriate strategic determination by the trial counsel for failing to object to the use of a particular method of identifying DNA sample-sorting computer program in question[.]" 440.10 Motion ¶¶ 14-15.

[3] "The long-recognized rule of Frye . . . is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has 'gained general acceptance' in its specified field." People v. Williams, --N.Y.3d--, 2020 WL 1516488, at *6 (N.Y. Mar. 31, 2020) (internal quotation marks and citation omitted). "A Frye hearing is necessary only if expert testimony involves 'novel or experimental' matters." People v. Byrd, 51 A.D.3d 267, 274 (1st Dep't 2008) (citation omitted).

[4] In paragraph 2 of the 440.10 Motion, Petitioner states, "Pursuant to C.P.L. 440.10(1)(h), the introduction of DNA created by the Forensic Statistical Tool (FST), method, could have (and

2

Respondent argues that Petitioner's unexhausted claim of ineffective assistance of counsel does not qualify for the "limited circumstances" in which a district court may grant a stay and abeyance of a habeas proceeding.  Docket # 25 ("Stay Opp'n") ¶ 16 (quoting Rhines v. Weber, 544 U.S. 269, 277 (2005)).  Specifically, Respondent argues that (1) Petitioner failed to show good cause for why he failed to raise the claim earlier in state court, and (2) the belated claim has no merit.  See id. ¶¶ 9, 16.  Petitioner did not file a reply to Respondent's opposition.

For the reasons that follow, Petitioner's motion is denied.

---

probably would have) been found to be unreliable after a Frye hearing," and in paragraphs 8 and 16 of the § 440.10 motion, Petitioner refers to the case of People v. Thompson, supra, which dealt with the FST method of DNA testing, and contends that Thompson mandates the conduct of a Frye hearing in his case.  As is explained below, however, Short Tandem Repeat ("STR") is the method of DNA testing that was used in Petitioner's case.

Petitioner initially made arguments concerning the DNA evidence in his case, and that his counsel was ineffective for failing to request a Frye hearing, in his Traverse Declaration dated September 2, 2019, Docket # 15.  See, e.g., Traverse Decl. ¶¶ 6-7 ("Petitioner is entitled to an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2254.  Here, defense counsel should explain what efforts were made to investigate this form of DNA misture [sic] linking the petitioner to the crime in question and why no Frye hearing was requested. . . . There is no showing in the record of an appropriate strategic determination by the trial counsel for failing to object to the use of a particular method of identifying DNA sample-sorting computer program in question . . ..") & ¶ 17 ("[P]ro se petitioner[s] . . . are not responsible for their previous attorney's or [sic] inaction, when he [sic] trial counsel was deficient in that he failed to requesting [sic] a pre-trial Frye hearing with respect to how the defense should have challenged the use of the program intended to 'solve previously irresolvable, complex DNA mixture, and also know that the software tool Y-STR is used to analyze evidence-containing mixtures of genetic material and determine whether if [sic] contains a match to a petitioner or DNA archived in a database' and . . . show prejudiced [sic] by demonstrating 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [citing Strickland v. Washington, 466 U.S. 668, 689, 694 (1984)]").  Then, in a letter to the Court dated October 14, 2019, in which he cited People v. Thompson, Petitioner made what he called an "addendum argument" to the effect that DNA evidence was admitted at his trial without a Frye hearing and therefore the expert testimony at trial regarding DNA violated his constitutional rights to due process.  See Docket # 18.  On November 6, 2019, the Court held a status conference in this matter, and shortly thereafter, Petitioner filed both the Stay Motion and 440.10 Motion.

## **DISCUSSION**

Petitioner's new claim for ineffective assistance of counsel is not included in the Petition, and although Petitioner does not state at this point that he wishes to amend the Petition to include the claim, the Court assumes that he would seek to do so once it is fully exhausted. Therefore, the Court considers as a threshold matter whether such amendment would be possible. If it would not, then it would be futile for the Court to grant Petitioner's motion to stay this habeas proceeding for the purpose of exhausting the claim.

**I.      Petitioner's Additional Claim is Barred by the Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on federal habeas petitions. 28 U.S.C. § 2244(d)(1). Section 2244 provides several possible dates from which the one-year period may begin to run. The applicable date here is when Petitioner's judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. See 28 U.S.C. § 2244(d)(1)(A). The judgment of conviction was entered against Petitioner on March 12, 2014, in the County Court of Dutchess County. Petitioner appealed the judgment of conviction, and the Appellate Division, Second Department affirmed the conviction on May 25, 2016. People v. Curran, 139 A.D.3d 1085 (2d Dep't 2016). The New York Court of Appeals denied Petitioner's application for leave to appeal on May 16, 2018. People v. Curran, 31 N.Y.3d 1080 (2018). The conviction thus became final for habeas purposes 90 days later, on August 14, 2018, when Petitioner's time to file a petition for writ of certiorari to the U.S. Supreme Court expired. See Sup. Ct. R. 13; Williams v. Artuz, 237 F.3d 147, 150–51 (2d Cir. 2001) (judgment becomes final under Section 2244(d)(1)(A) upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the

4

prisoner elects not to file a petition for certiorari—[the expiration of] the time to seek direct review via certiorari").  Consequently, Petitioner had until August 14, 2019, to file his habeas petition.

Petitioner filed the Petition on May 6, 2019, within the one-year limitations period, but he did not raise any claim of ineffective assistance of counsel among the four claims originally listed in the Petition.  See Petition at 6-13.  At the earliest, Petitioner first mentioned the ineffective assistance of counsel in his Traverse Declaration dated September 2, 2019—nineteen days after the expiration of the limitations period, and he did not seek a stay and abeyance of this proceeding to exhaust that claim until November 15, 2019—an additional 74 days later.  Accordingly, the new claim is time-barred.[5]  See 28 U.S.C. § 2244(d)(1).

## II.     The Claim Does Not Relate Back to The Original Petition

Petitioner could nonetheless amend his Petition once he exhausts the ineffective assistance of counsel claim in his 440.10 Motion, even if the claim is time-barred, if it relates back to the date of the original Petition.  See 28 U.S.C. § 2242 (allowing habeas petitions to be amended "as provided in the rules of procedure applicable to civil actions").  "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  However, an amended habeas petition does not qualify for relation back just because the original petition and the amended

---

[5] At this time, and on the information before this Court, there are no grounds to grant equitable tolling of the limitations period.  See Holland v. Florida, 560 U.S. 631, 649 (2010) (for equitable tolling a petitioner must show that (1) extraordinary circumstances prevented him or her from filing his or her petition on time and that (2) he or she acted with reasonable diligence throughout the period he or she seeks to toll).

pleading arose from the same trial and conviction. Mayle v. Felix, 545 U.S. 644, 650 (2005). In Mayle, the Supreme Court held that an amended habeas petition cannot escape AEDPA's one-year statute of limitations when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading. Id. See also Kirk v. Burge, 646 F. Supp. 2d 534, 551 (S.D.N.Y. 2009); Reiter v. United States, 371 F. Supp. 2d 417, 423 (S.D.N.Y. 2005).

    Here, Petitioner's new claim of ineffective assistance of counsel does not relate back to his original pleading. The Petition alleges four grounds for relief: (1) the prosecution failed to prove its case beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) Petitioner was deprived of the due process right to a fair trial when, over objection, the court allowed in evidence that before the murder, Petitioner allegedly assaulted the mother of his children, even though that was irrelevant and prejudicial; (3) Petitioner was deprived of the due process right to a fair trial when, over objection, the court allowed in a graphic photograph of the victim; and (4) Petitioner was deprived of the due process right to a fair trial when, over objection, the court delivered a flight charge and thus invited the jury to infer consciousness of guilt. See id. at 6-13. Petitioner's ineffective assistance claim does not involve any of these matters. Rather, it alleges that his counsel (1) did not object to the People's DNA expert's testimony regarding the use of the FST method of DNA analysis in his case, and (2) did not request a Frye hearing to establish the validity of that method. See 440.10 Motion ¶¶ 8, 13-16.[6]

---

[6] As noted in footnote 4, supra, Petitioner misunderstands which method of DNA testing was used in his case. The 440.10 Motion correctly notes that the DNA evidence in Petitioner's case "was tested using the traditional P[olymerase]C[hain][Reaction]/ S[hort]T[andem]R[epeat] method," id. ¶ 13; see also Docket # 7-13 (trial transcript) at 951-55 (testimony of People's DNA expert explaining how an STR DNA profile is generated, including the use of PCR technology as part of the DNA analysis process), but then the 440.10 Motion later states that "there was not a sufficient factual predicate that would have permitted the court to admit DNA results from the

Nowhere in the Petition did Petitioner raise either an issue regarding the reliability of the scientific methods testified to at trial or an issue with his assistance of counsel. Thus, the facts supporting his ineffective assistance of counsel claim differ in "time and type" from the facts underlying each of the claims in the original Petition. See Kirk, 646 F. Supp. 2d at 551 (denying relation back where ineffective assistance of counsel claim differed in both time and type); Jenkins v. Greene, 646 F. Supp. 2d 615, 621 (S.D.N.Y. 2009) (same), aff'd, 630 F.3d 298 (2d Cir. 2010); Jorge v. Phillips, No. 05-cv-6091 (LAP)(MHD), 2008 WL 344718, at *3 (S.D.N.Y. Jan. 31, 2008)[7] (same). Because Petitioner cannot amend the Petition to add the new claim, it would be futile to grant Petitioner's motion to stay this habeas proceeding.

### III.  The Rhines Standard for Granting a Stay Has Not Been Met

Respondent opposes the Stay Motion on the ground that Petitioner has not met the standard for granting a stay as articulated in Rhines v. Weber, 544 U.S. 269 (2005), which applies in the case of a "mixed" petition, i.e., a petition including both exhausted and unexhausted claims. Here, the Petition is not "mixed," as the claim of ineffective assistance of counsel is entirely new, and therefore, it is unclear whether the Rhines standard applies. See Escalera v. Lempke, No. 1:15-CV-00674 (MAT), 2018 WL 3342572, at *1 (W.D.N.Y. July 9, 2018) ("Courts in this Circuit have disagreed over whether petitioners seeking to exhaust new claims may seek a stay under Rhines.") (internal quotation marks and citation omitted). Nonetheless, "[f]or the purpose of resolving [Petitioner's] pending application, the Court assumes without deciding that habeas petitioners may seek a stay pursuant to Rhines in order to exhaust

---

record that [the People's DNA expert witness] testified to before the jury, regarding the FST method [sic] DNA testing." Id. ¶ 16.

[7] Copies of unpublished opinions are being provided to Petitioner with his copy of this Order.

new claims, not raised in the original petition." Id. (citation omitted). Even if the Court applies the Rhines standard in this instance, Petitioner's motion still must be denied. Under Rhines, federal courts may grant a stay to allow for exhaustion of a claim in state court if the petitioner can demonstrate (1) good cause for the failure to exhaust; (2) that the unexhausted claim is not plainly meritless; and (3) that the petitioner did not engage in intentionally dilatory litigation tactics. See 544 U.S. at 277-78. As explained above, granting a stay in this case would be inappropriate since the new claim for ineffective assistance of counsel is dismissible as time-barred. See Cotton v. Burge, No. 08–CV–453S, 2009 WL 3165868, at *4 (W.D.N.Y. Sept. 26, 2009) ("Even assuming that a habeas petition containing only exhausted claims can be stayed to permit a petitioner to exhaust a new claim which will be added to the petition, such a stay would be inappropriate here because, as explained above, the new claim (ineffective assistance of appellate counsel) is time barred and plainly meritless, and thus not an appropriate occasion for a stay under Rhines.") (citation omitted).

    Moreover, Petitioner has not explained in the Stay Motion why good cause exists for his failure to exhaust the new claim before filing his habeas petition. In a letter dated October 10, 2019, addressed to the Honorable Cathy Seibel, the District Judge to whom this case is assigned, Petitioner states that People v. Thompson, 65 Misc. 3d 1206(A) (Sup. Ct. N.Y. Co. 2019), which was decided on September 25, 2019, provided "new information" questioning the reliability of DNA evidence derived from the use of the FST and therefore raised a question about the DNA evidence introduced at his trial. See Docket # 17.[8] Respondent points out, however, that

---

[8] The FST is an analytic tool that was used by New York City's Office of the Chief Medical Examiner that assigns "likelihood ratios" to forensic samples made up of DNA from up to three individuals. People v. Thompson, 65 Misc. 3d 1206(A), 2019 WL 4678813, at *1 (Sup. Ct. N.Y. Co. Sept. 25, 2019).

Petitioner's case involved the use of STR DNA testing, not FST DNA testing.  See Stay Opp'n ¶ 10; Docket # 7-13 (trial transcript) at 951-55 (explaining how STR DNA profile is generated), 958-59 (explaining Y-STR testing, which generates a profile for males on the same paternal line).[9]  Thus, Petitioner's argument that he "could not have made a record of something about which he had not known" in his October 14, 2019, letter to the Court, Docket # 18, which likewise cites People v. Thompson, is ultimately misplaced and, without more, cannot satisfy the first prong of the Rhines test.[10]

Petitioner similarly cannot satisfy the second prong of the Rhines test, as he has failed to explain why his claim for ineffective assistance of counsel is not plainly meritless.  See Rhines, 544 U.S. at 577.  The STR method has gained general acceptance in the field of DNA testing and identification.  See, e.g., People v. Owens, 187 Misc. 2d 838 (Sup. Ct. Monroe Co. 2001) (finding scientific acceptance and reliability of STR DNA testing under the Frye standard); State v. Deloatch, 804 A.2d 604, 612-13 (N.J. Super. Ct. 2002) (same); see also In re M.R., 63 Misc. 3d 916, 920-21 (Sup. Ct. Orange Co. 2019) (denying request for Frye hearing as there was "a general acceptance of Y-STR DNA analysis in the scientific community") (internal quotation marks and citation omitted).  Thus, expert testimony based on this method did not require a

---

[9] At Petitioner's trial, the People's DNA expert testified as to how a STR DNA profile is created, explaining that a STR, or short tandem repeat, "is a four base pair sequence [of DNA] in which our lab is looking for the number of repetitions for this four base pair sequence," and that to create a STR DNA profile, the lab looks at the alleles, or number of repetitions, of a person's STR designations at 15 locations on a person's genome.  Docket # 7-13 at 951-52.

[10] Even before the decision in People v. Thompson was issued, Petitioner was aware of the claim he now seeks to exhaust, as he made arguments concerning the DNA evidence, and that his counsel was ineffective for failing to request a Frye hearing, in his Traverse Declaration dated September 2, 2019.  See footnote 4, supra; compare Traverse Decl. ¶¶ 6-7 with 440.10 Motion ¶¶ 13-15.

9

separate Frye hearing to determine its reliability because its reliability had already been established.  See People v. Easley, 171 A.D.3d 785, 786 (2d Dep't 2019) (court rejected need for a Frye hearing "where it can rely upon previous rulings in other court proceedings as an aid in determining the admissibility of the proffered testimony") (internal quotation marks omitted) (quoting People v. LeGrand, 8 N.Y.3d 449, 458 (2007)).  Petitioner's defense counsel would have had no ground to object to the admissibility of expert testimony based on STR DNA testing, and an application for a Frye hearing would have been frivolous.  Without any other evidence or suggestion that Petitioner's counsel provided ineffective assistance, Petitioner's claim is without merit.  See People v. Caban, 5 N.Y.3d 143, 152 (2005) ("There can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success.' ") (quoting People v Stultz, 2 N.Y.3d 277, 287 (2004)); see also Brown v. Ebert, No. 05 Civ. 5579 DLC KNF, 2006 WL 1273830, at *3-5 (S.D.N.Y. May 9, 2006) (denying stay of habeas proceeding, finding it "not likely that petitioner will prevail on his claim of ineffective assistance of appellate counsel" and that "petitioner cannot show that his claim of ineffective assistance of appellate counsel is potentially meritorious").

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion for a stay and abeyance of this habeas proceeding is **denied**.

Dated: June 18, 2020
      White Plains, New York

**SO ORDERED,**

_____
Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of this Order has been mailed to Petitioner by Chambers