UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN CURRAN,

                              Petitioner,

        - against -

WILLIAM F. KEYSER,

                              Respondent.

19 Civ. 4196 (CS) (AEK)

**REPORT AND
RECOMMENDATION**

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.**[1]

        Currently before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by *pro se* Petitioner Justin Curran ("Petitioner"), challenging his judgment of conviction, following a jury trial, for three counts of murder in the second degree, one count of burglary in the first degree, one count of robbery in the first degree, and one count of grand larceny in the fourth degree.  ECF No. 2 ("Petition" or "Pet.") at 2 ¶ 7[2]; *see* ECF No. 7 ("Resp. Aff.") ¶ 2.  Petitioner raises in the Petition the same four grounds for relief that he raised on direct appeal:  (1) the People failed to prove their case beyond a reasonable doubt, *i.e.*, legal insufficiency of the evidence, and the verdict was against the weight of the evidence; (2) deprivation of the due process right to a fair trial when, over objection, the court allowed in evidence that before the murder, Petitioner allegedly assaulted the mother of his children by throwing a night light in her face, even though that was irrelevant and prejudicial; (3) deprivation

---

[1] This matter originally was referred to the Honorable Lisa Margaret Smith on August 20, 2019.  ECF No. 12.  It was reassigned to the undersigned on October 16, 2020.

[2] Citations to the Petition are to the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

of the due process right to a fair trial when, over objection, the court allowed in a graphic photograph of the victim; and (4) deprivation of the due process right to a fair trial when, over objection, the court delivered a flight charge and thus invited the jury to infer consciousness of guilt.  Pet. at 6-13.

For the reasons that follow, I respectfully recommend that the Petition be DENIED.

## BACKGROUND

The following factual background and procedural history are taken from the Petition, Respondent's exhibits ("Resp. Ex."), ECF Nos. 7-1 through 7-24,[3] and the filings in this case.

## I.　　Factual Background[4]

A woman named Laurie Ferguson lived alone in a trailer at lot J1 at the Mobile Manor Trailer Park on Route 9G in the Town of Hyde Park, Dutchess County.  Trial Transcript ("Tr.")

---

[3] Citations to "Resp. Ex. __" refer to the exhibits submitted to the Court by Respondent that comprise the state court record from Petitioner's criminal case, including his pre-trial and trial transcripts, Resp. Ex. 4, which are filed at ECF Nos. 7-4 through 7-16, and his sentencing transcript, Resp. Ex. 5, which is filed at ECF No. 7-17.  The pre-trial proceedings, including jury selection, were conducted over three days, November 12, 13, and 14, 2013.  The transcripts have been docketed as follows:  ECF No. 7-4 (November 13, 2013 transcript), ECF No. 7-5 (November 14, 2013 transcript), and ECF No. 7-7 (November 12, 2013 transcript).

[4] This section provides a summary of facts relevant to Petitioner's state court conviction. Additional facts are discussed elsewhere in this Report and Recommendation as needed for disposition of Petitioner's claims.  A detailed recitation of facts is set forth at pages 2-30 of Respondent's memorandum of law in opposition to the Petition.  See ECF No. 8 ("Resp. Mem."). Based on the Court's own review of the voluminous transcripts from Petitioner's underlying criminal case, the Court finds that Respondent's summary is a substantially accurate presentation of the trial testimony.

at 83, 88, 142[5]; *see* Resp. Ex. 3 (ECF No. 7-3) (Bill of Particulars).  Ferguson owned a 2006 Saturn automobile and had two sets of keys to the car.  Tr. at 85-86.  Petitioner also lived at the Mobile Manor Trailer Park.  *Id.* at 196.  Until September 28, 2012, he lived there in a trailer at lot F8 with Tina Norman, the mother of his children, and their four daughters.  *Id.* at 190, 192, 193.  On that date, Norman ended the relationship with Petitioner, and she and the children moved out.  *Id.* at 193-94.  Norman took her 2007 Honda Accord with her, but she allowed Petitioner to use her 2006 Ford Freestar van.  *Id.* at 196.  In accordance with a Family Court visitation agreement entered into in November 2012, Petitioner had dinner with the children on Wednesday nights, and they stayed with him on the weekends when Norman worked as a licensed practical nurse.  *Id.* at 194-95.  At that point in time, Petitioner was living in a trailer at lot T1 at the Mobile Manor Trailer Park with Trinaka Campbell, two of her children, and her grandchild.  *Id.* at 196, 730-32, 761-62.

On November 21, 2012, the Wednesday before Thanksgiving, Norman drove the Honda Accord to Petitioner's residence to pick up the children, arriving at approximately 5:45 or 5:50 p.m.  *Id.* at 195-98.  Norman entered the trailer and gathered the children and their belongings.  *Id.* at 198.  She told them to get in the Ford Freestar van rather than the Honda Accord because she planned to use the bigger vehicle to travel out of town for Thanksgiving.  *Id.* at 198-99.  Norman had arranged with Petitioner that he would use the Honda Accord to drive to his sister's house for Thanksgiving while Norman used the van.  *Id.* at 199.

---

[5] Citations to the Trial Transcript are to the page numbers in the transcript itself.  The Trial Transcript, while comprised of consecutively numbered pages, has been docketed in parts, as follows:  ECF No. 7-6 (pages 1-127), ECF No. 7-8 (pages 128-273), ECF No. 7-9 (pages 274-435), ECF No. 7-10 (pages 436-608), ECF No. 7-11 (pages 609-758), ECF No. 7-12 (pages 759-894), ECF No. 7-13 (pages 895-1009), ECF No. 7-14 (pages 1010-1074), ECF No. 7-15 (pages 1075-1192), and ECF No. 7-16 (pages 1193-1211).

After all four children got in the van and Norman drove away, the youngest daughter asked to go back to Petitioner's trailer to retrieve the "dream light" (a kind of night light) she left there. *Id.* at 200, 204-05. Norman called Petitioner's cell phone and told him she was coming back to get the dream light. *Id.* at 205. When she arrived, Petitioner was standing outside; after having Campbell's son retrieve the dream light from the trailer, Petitioner threw it through the passenger window of the van, striking Norman in the right eye. *Id.* at 205-06. Norman, who was upset and hurt, first drove home, and then had the man with whom she lived drive her to the Hyde Park police station. *Id.* at 206-07. Once at the police station, Norman told Officer Daniel Montalto that she wanted to get her Honda Accord back from Petitioner because of what had just occurred. *Id.* at 207-09; *see also id.* at 134. She showed Officer Montalto the title to her Honda Accord. *Id.* at 209. Officer Montalto was aware of a limited order of protection that Norman had against Petitioner that allowed her to have contact with Petitioner for the purpose of sharing custody of their children. *Id.* at 131-32.

Officer Montalto followed Norman back to the Mobile Manor Trailer Park so that Norman could get her vehicle. *Id.* at 134, 209. They arrived at Campbell's trailer, which was located 100 to 150 feet from Ferguson's trailer. *Id.* at 135. Officer Montalto spoke to Petitioner and told Petitioner that he and Norman were there to retrieve Norman's vehicle. *Id.* at 136; *see id.* at 210. Petitioner became visibly angry, pacing and acting a little erratic, and jumping up and down, because the car was his only means of transportation. *Id.* at 136-37; *see also id.* at 211, 734. Petitioner took his belongings out of the trunk and threw them on the ground. *Id.* at 137. Norman then got in the car and drove away. *Id.* at 138, 210-11. Officer Montalto tried to talk to Petitioner, but Petitioner was irate and went inside Campbell's trailer and closed the door. *Id.* at 138-39. Later on, Petitioner sent Norman some text messages, saying that she could not leave

4

him without a vehicle and pleading with her to return the Honda Accord to him. *Id.* at 211. An hour after Officer Montalto's departure, Petitioner left Campbell's trailer; Campbell did not see him again until the next (Thanksgiving) evening. *Id.* at 735-36.

Ferguson was supposed to go to the home of her employer, Deborah Loos, on November 22, 2012 for Thanksgiving, but she did not show up. *Id.* at 67, 70, 71-72. Loos ended up calling her friend, Debbie Clark, who in turn called Ferguson's daughter, Dawn Lovell, and told her to go check on Ferguson. *Id.* at 72-73.

Lovell called Ferguson on Thanksgiving at around 10:00 or 10:15 a.m., and again around 1:00 or 1:30 p.m., and left messages when Ferguson did not answer. *Id.* at 94-95. Around 6:15 p.m., Lovell received a phone call from a friend who said that Ferguson had never shown up at Loos's house. *Id.* at 96. After calling Ferguson again and leaving messages, Lovell called her brother and her aunt to find out if they had spoken to Ferguson that day. *Id.* at 97. When they told Lovell that they had not, Lovell decided to go to Ferguson's trailer to make sure she was okay. *Id.* Lovell drove to Ferguson's trailer with her son around 6:30 p.m. *Id.* at 98. Lovell had the key to Ferguson's trailer. *Id.* Ferguson always kept her front door closed and locked, but when Lovell's son went to open the door, he found that it was unlocked. *Id.* at 99. After walking through the trailer, Lovell's son discovered Ferguson's body on the floor of the closet. *Id.* at 99-101. Lovell then saw Ferguson's dead body and called 911. *Id.* at 101.

When Lovell arrived at the trailer, Ferguson's car was not there. *Id.* at 106. According to Lovell, Ferguson kept the keys to her car and her home on a key holder hanging inside the door to the kitchen of her trailer. *Id.* at 86, 89, 113-14. Ferguson had a second set of car keys that she kept in her pocketbook. *Id.* at 114. Ferguson never lent her car to anyone in the trailer park, nor

did anyone else drive her car, but police officers arriving on the scene found that both sets of car keys were missing. *Id.* at 91-92, 188.

Investigators obtained surveillance videos showing Petitioner in the early morning of November 22, 2012, several hours before Ferguson's body was found, operating Ferguson's car at both at the drive-through ATM of a local bank and at a local gas station. *Id.* at 371, 376-82, 393-412. Ferguson's car was found the day after Thanksgiving off of Reservoir Road in Hyde Park and impounded by the New York State Police. *Id.* at 440-44, 456-57. On December 1, 2012, the New York State Police "pinged" Petitioner's cell phone, *i.e.*, had the cell phone company send a signal to Petitioner's cell phone to help determine the location of the phone, and learned that the phone was located in Tampa, Florida. *Id.* at 465-66. On December 3, 2012, members of the New York State Police traveled to Tampa, where Petitioner's sister resided. *Id.* at 466-67. Petitioner was taken into custody in Tampa on December 4, 2012. *Id.* at 486.

The autopsy of Ferguson's body, which was conducted on November 23, 2012, revealed stab wounds to her torso and upper back and cutting wounds to her left shoulder, left ear, scalp, lower back, and left hand. *Id.* at 507-11, 515-19. The medical examiner who performed the autopsy opined that the multiple stab wounds had caused Ferguson's death. *Id.* at 523.

## II.    Procedural History

### A.    The Trial

Petitioner's trial took place over 10 days between November 15, 2013 and December 3, 2013.[6]  On December 3, 2013, the jury reached a verdict, finding Petitioner guilty of three counts of murder in the second degree, one count of burglary in the first degree, one count of robbery in the first degree, and one count of grand larceny in the fourth degree.  Tr. at 1200-07.  On March 12, 2014, Petitioner was sentenced to indeterminate terms of imprisonment of 25 years to life on each of the three counts of murder in the second degree, with those sentences to run concurrently; determinate terms of imprisonment of 25 years with five years of post-release supervision on the counts of burglary in the first degree and robbery in the first degree, with those sentences to run concurrently; and an indeterminate term of imprisonment of one and one-third to four years on the count of grand larceny in the fourth degree, with that sentence to run concurrently to the other five sentences.  Resp. Ex. 5 (ECF No. 7-17) at 30-32, 38.[7]

---

[6] The trial that is the subject of this habeas proceeding only addressed the first six counts of the 21-count indictment that was returned against Petitioner.  *See* Resp. Ex. 2 (ECF No. 7-2); ECF No. 7-7 at 9-10.  Those six counts related to the events of November 21, 2012, including Ferguson's death.  Counts seven through 21 of the indictment related to events that occurred on November 28 and 29, 2012, including charges that Petitioner kidnapped and assaulted Norman. *See* Resp. Ex. 2.

[7] In its decision on Petitioner's direct appeal, the Appellate Division, Second Department stated that the March 12, 2014 judgment included a conviction for burglary in the second degree upon a plea of guilty.  *See People v. Curran*, 139 A.D.3d 1085, 1085 (N.Y. App. Div. 2016). The sentencing transcript reflects that the charge of burglary in the second degree, count 12 of the original 21-count indictment, had been severed from that indictment, and the court entered a negotiated sentence on that count with a waiver of Petitioner's right to appeal.  *See* Resp. Ex. 5 at 34-36.  Petitioner's conviction for burglary in the second degree was not a subject of the direct appeal, nor have any challenges with respect to that conviction been raised in this habeas proceeding.

## B.        Petitioner's Direct Appeal

Petitioner, proceeding through counsel, directly appealed his judgment of conviction. Resp. Ex. 6 (ECF No. 7-18) ("App. Br.").  On appeal, Petitioner raised four claims:  (1) the People failed to prove their case beyond a reasonable doubt, *i.e.*, legal insufficiency of the evidence, and the verdict was against the weight of the evidence; (2) deprivation of the due process right to a fair trial when, over objection, the County Court allowed in evidence that before the murder, Petitioner allegedly assaulted the mother of his children by throwing a night light in her face, even though that was irrelevant and prejudicial; (3) deprivation of the due process right to a fair trial when, over objection, the County Court allowed in a graphic photograph of the victim; and (4) deprivation of the due process right to a fair trial when, over objection, the County Court delivered a flight charge and thus invited the jury to infer consciousness of guilt.  *See generally* App. Br.

The Appellate Division, Second Department affirmed Petitioner's conviction on May 25, 2016.  *People v. Curran*, 139 A.D.3d 1085 (N.Y. App. Div. 2016).  The appellate court found that the evidence was "legally sufficient to establish [Petitioner's] guilt of murder in the second degree (three counts), burglary in the first degree, robbery in the first degree, and grand larceny in the fourth degree beyond a reasonable doubt." *Id.* at 1085.  It also found that the verdict of guilt was not against the weight of the evidence. *Id.* at 1086.  The Appellate Division determined that Petitioner's claim that the County Court "improperly admitted evidence that he threw a 'dream light' at his former paramour, striking her in the eye, as part of the sequence of events that precipitated the murder of the victim, [was] unpreserved for appellate review because he did not object to the court's curative instruction as given and did not request any additional curative instructions." *Id.* (citing, *inter alia*, N.Y. Crim. Proc. Law § 470.05(2)).  It also determined that

8

the County Court "providently exercised its discretion in admitting into evidence an autopsy photograph of the victim's left hand," finding that the photograph "was neither excessively gruesome nor introduced for the sole purpose of arousing the jurors' passions and prejudicing [Petitioner]." *Id.* at 1087. Finally, the Appellate Division concluded that Petitioner failed to preserve for appellate review his claim that the County Court's consciousness of guilt charge lacked evidentiary support. *Id.*

In a letter dated March 19, 2018, Petitioner filed an application for leave to appeal to the New York Court of Appeals. Resp. Ex. 9 (ECF No. 7-21). The Court of Appeals denied leave to appeal on May 16, 2018. *People v. Curran*, 31 N.Y.3d 1080 (2018).

## C.     The Instant Petition

On May 6, 2019, Petitioner filed the Petition,[8] raising the same grounds for relief that he raised in his brief on direct appeal. *See* Pet. at 6-10, 16-58.[9] Respondent filed his opposition papers on August 16, 2019. ECF Nos. 7-8. Petitioner filed a traverse in further support of the Petition, which was docketed on September 16, 2019. ECF No. 15.

On November 25, 2019, Petitioner filed a motion to stay this habeas proceeding and hold it in abeyance so that he could exhaust a new claim for ineffective assistance of trial counsel. ECF No. 21. Magistrate Judge Smith denied that motion on June 18, 2020, finding that it would be futile to grant a stay since Petitioner's claim of ineffective assistance of counsel was untimely and did not relate back to the claims asserted in the Petition, and furthermore, that he did not

---

[8] Under the prison mailbox rule, the Court deems the Petition filed on the date on which it was delivered to prison authorities for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). Here, the Petition states that it was placed in the prison mailing system on May 6, 2019. *See* Pet. at 14. Accordingly, the Court deems the Petition to have been filed as of that date.

[9] Petitioner attached the argument section of the brief filed by his counsel on his direct appeal as "Exhibit A" to the Petition. *See* Pet. at 15-59.

9

meet the standard for granting a stay set forth in *Rhines v. Weber*, 544 U.S. 269 (2005).  ECF No. 34.

Petitioner thereafter filed several applications for an evidentiary hearing and an emergency oral hearing, all of which were in furtherance of developing the same previously unasserted ineffective assistance of counsel claim based on various allegations concerning counsel's failures in dealing with the DNA evidence and the testimony regarding that evidence presented at trial.  *See* ECF Nos. 41, 47, 48, 52, 53.  Petitioner has made this claim and advanced these allegations ever since he filed his traverse, and they were the subject of the denied motion for a stay and abeyance.  The most recent submission was docketed on December 5, 2023.  ECF No. 53.  Respondent has opposed these applications, citing, among other things, Magistrate Judge Smith's decision denying the motion for a stay and abeyance.  *See* ECF Nos. 45, 50.

## DISCUSSION

### I.    Standard of Review

"Habeas review is an extraordinary remedy."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C §§ 2244 and 2254.  If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."

10

28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with 28 U.S.C § 2254(d).

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). There is no dispute here that the Petition was timely filed.

Under the AEDPA, all state court remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). "This requires that the prisoner 'fairly present' his [or her] constitutional claim to the state courts, which he [or she] accomplishes by presenting the essential factual and legal premises of his [or her] federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (quotation marks omitted). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982).

Even where a timely and exhausted habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision is "independent" when it "fairly appears" to rest primarily on

state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740). A decision is "adequate" if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply the AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under the AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "[A]n 'unreasonable application' of 'clearly established' Supreme Court precedent occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). While

it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear.  However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Id.* at 68-69 (cleaned up).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct.  *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## II.     Petitioner's Habeas Claims

### A.     Petitioner's Legal Sufficiency of the Evidence and Weight of the Evidence Claims (Ground One)

#### 1.     Legal Sufficiency of the Evidence

Petitioner was convicted of three counts of murder in the second degree, one count of burglary in the first degree, one count of robbery in the first degree, and one count of grand larceny in the fourth degree.  Petitioner challenges the legal sufficiency of the evidence to support his convictions on those counts, asserting that "the People failed to[] prove its case beyond a reasonable doubt . . ."  Pet. at 6.  The overall thrust of Petitioner's argument is that there was no direct evidence that he committed any of the crimes of which he was convicted, and the circumstantial evidence that he committed those crimes was insufficient.  *See generally id.* at 16-35 (pages 13-32 of Petitioner's brief on direct appeal).

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*)).

13

Further, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Id.* (cleaned up). Accordingly, a habeas petitioner must overcome "this twice-deferential standard" to prevail on a sufficiency of the evidence challenge. *Id.*; *see also Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) ("When a federal habeas petition challenges the sufficiency of the evidence to support a state-court conviction, AEDPA establishes a standard that is 'twice-deferential.'" (quoting *Matthews*, 567 U.S. at 43)). Juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts, and on habeas review *a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court*." *Santone*, 689 F.3d at 148 (cleaned up) (emphasis in *Santone*).

Here, the Appellate Division, Second Department rejected Petitioner's challenge to the legal sufficiency of the evidence supporting his conviction, holding that

> [v]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [Petitioner's] guilt of murder in the second degree (three counts), burglary in the first degree, robbery in the first degree, and grand larceny in the fourth degree beyond a reasonable doubt. Contrary to [Petitioner's] contention, the standard of appellate review in determining whether the evidence before the jury was legally sufficient to support a finding of guilt beyond a reasonable doubt is the same for circumstantial and non-circumstantial cases. Here, the circumstantial evidence adduced was sufficient to show, *inter alia*, that [Petitioner] intended to kill the victim. Furthermore, despite [Petitioner's] contentions to the contrary, the circumstantial evidence sufficiently established that he used force to deprive the victim of her property, namely, an automobile. In addition, with respect to the burglary conviction, there was sufficient circumstantial evidence, *inter alia*, that [Petitioner] entered the victim's home unlawfully, including DNA evidence linking [Petitioner] to the crime.

*People v. Curran*, 139 A.D.3d at 1085-86 (cleaned up). The "twice deferential" standard applies to this Court's review of Petitioner's challenge to the legal sufficiency of the evidence supporting

14

his conviction.  Thus, the Appellate Division's decision may not be overturned unless it was objectively unreasonable.

"A federal habeas court reviewing an insufficient evidence claim must look to state law to determine the elements of the crime." *Dzebolo v. Perez*, No. 07-cv-3421 (ER) (GAY), 2012 WL 4763090, at *6 (S.D.N.Y. Jan. 12, 2012) (citing *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)), *adopted by* 2013 WL 81335 (S.D.N.Y. Jan. 7, 2013).[10]  Petitioner was convicted of three counts of murder in the second degree under New York Penal Law §§ 125.25(1) & (3). With respect to the first count of murder in the second degree, a person is guilty of murder in the second degree pursuant to New York Penal Law § 125.25(1) when, "[w]ith intent to cause the death of another person, he [or she] causes the death of such person . . . ."[11]  "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his [or her] conscious objective is to cause such result or to engage in such conduct."  New York Penal Law § 15.05(1).  "Intent is a mental state peculiarly within the knowledge of the actor, and must ordinarily be proven on the basis of inferences drawn from the totality of the circumstances." *Dzebolo*, 2012 WL 4763090, at *6 (quotation marks omitted).  "In seeking to determine intent in a homicide, the trier of fact considers, therefore, all of the circumstances of the act, including, but not limited to, the method in which the deceased was killed and the accused's conduct thereafter." *Id.*  "The trier of fact may also be guided by the ancient rule that

---

[10] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Petitioner along with this Report and Recommendation.

[11] As to all sections of the New York Penal Law pursuant to which Petitioner was found guilty, the Court quotes the versions of the statutes that were in effect at the time of Petitioner's trial.

a person intends that which is the natural and necessary consequence of an act done by him [or her]." *Id.* (quotation marks omitted).

With respect to the second and third counts of murder in the second degree, or felony murder, pursuant to New York Penal Law § 125.25(3), a person is guilty of felony murder when, "[a]cting either alone or with one or more other persons, he [or she] commits or attempts to commit robbery [or] burglary, . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he [or she] . . . causes the death of a person other than one of the participants." Petitioner was also convicted of one count of burglary in the first degree and one count of robbery in the first degree. Pursuant to New York Penal Law § 140.30(2), a person is guilty of burglary in the first degree when "he [or she] knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he [or she] . . . [c]auses physical injury to any person who is not a participant in the crime[.]" Pursuant to New York Penal Law § 160.15(1), a person is guilty of robbery in the first degree when "he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] . . . [c]auses serious physical injury to any person who is not a participant in the crime[.]"

With respect to the final count of which Petitioner was convicted, grand larceny in the fourth degree, pursuant to New York Penal Law § 155.30(8), a person is guilty of grand larceny in the fourth degree when "he [or she] steals property and when . . . [t]he value of the property exceeds one hundred dollars and the property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law . . . ."

The evidence presented at trial was legally sufficient to support Petitioner's conviction of all these crimes. As noted by the Appellate Division, this was a case reliant on circumstantial

16

evidence to prove Petitioner's guilt beyond a reasonable doubt, and there was abundant circumstantial evidence supporting the jury's verdict of guilt. *See* Resp. Mem. at 43-49. First, there was evidence that Petitioner had been present inside Ferguson's trailer: (1) Petitioner's green cargo pants, which were found in a black plastic bag in his bedroom in Campbell's trailer, had a blood stain that contained a mixture of Petitioner's and Ferguson's DNA on the left pant leg and two different blood stains with Ferguson's DNA on the right pant leg, Tr. at 976-78; and (2) Petitioner's DNA was found on the cap of a bottle of a cleaning product that was collected from inside Ferguson's trailer, *id.* at 982-84.[12] In addition, Ferguson's cell phone was found in a bag in Petitioner's bedroom in Campbell's trailer approximately three weeks after the crimes were committed. *Id.* at 212-14, 222-24, 737, 750-52. Second, there also was evidence establishing that Ferguson was attacked by someone, who the jury reasonably concluded was Petitioner, upon entry into her trailer, as the majority of the blood spatter was found in the small foyer inside the trailer's front door. *Id.* at 251, 291-95, 358. Third, the evidence regarding Ferguson's significant stab wounds to her torso and back, as well as the defensive wound on Ferguson's left hand, was sufficient to establish that Ferguson's killer (Petitioner) acted intentionally. The medical examiner opined that a "very significant amount of force" was used to cause the 10-inch deep stab wound to Ferguson's front torso and the six-inch deep stab wound to Ferguson's back that cut through both her left pulmonary artery and her coronary artery. *Id.* at 519-20; *see id.* at 516-17, 519. Fourth, the medical examiner could not exclude the large knife

---

[12] The bottle cap DNA profile was missing an allele, so it was consistent with having come from Petitioner and/or one of his paternal relatives. *See* Tr. at 982-83.

that had been found during the search of the van Petitioner had driven to Florida as the knife that had been used to stab Ferguson. *Id.* at 522, 526-27; *see id.* at 487-89.[13]

As to the counts of felony murder, as well as the burglary and robbery counts, the evidence presented at trial was sufficient to support the jury's finding that Petitioner entered Ferguson's trailer with the intent to steal her car keys so that he could steal her car. Norman had come to the trailer park and taken back her Honda Accord, Petitioner's only means of transportation, approximately one hour earlier, causing Petitioner to become visibly upset and irate and to act erratically. *Id.* at 136-37, 211, 734-35. Sufficient evidence supported the conclusion that Petitioner then went to Ferguson's trailer, armed with a knife, to steal her car keys, and when she opened the door, he attacked Ferguson with the knife, stabbing her multiple times and causing her death. While there was no evidence of a forcible entry into Ferguson's trailer—Petitioner cites the absence of signs of a break-in as a failure of proof as to the burglary charge, *see* Pet. at 29, 32—that is not a necessary element of the crime of burglary. *See Serrata v. Fischer*, No. 13-cv-2632 (LGS), 2013 WL 5708599, at *2 (S.D.N.Y. Oct. 21, 2013) ("[T]he criminal statute for first-degree burglary does not require forced entry, only that the defendant 'knowingly enters or remains unlawfully.'" (quoting N.Y. Penal Law § 140.30)); *see also* N.Y. Penal Law § 140.00(5) ("A person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so."). Petitioner's statements to the police that he did not know Ferguson and had never been to her trailer, Tr. 570, 589, supported the conclusion that

---

[13] When Petitioner was interviewed by investigators on November 24, 2012, he had a "brand new cut" on his left index finger, but Petitioner said he did not know how he got it. Tr. at 580, 597. In a signed, written statement that Petitioner provided to investigators on November 26, 2012, he stated that he cut his left thumb and middle finger when Norman helped him move his 55-gallon saltwater fish tank from the van to Campbell's trailer porch when she came to pick up the kids on the evening of November 21, 2012. *Id.* at 587-88. Norman denied helping Petitioner to move a fish tank. *Id.* at 216.

he did not have permission to enter her trailer.  The previously mentioned evidence of substantial amounts of blood immediately inside the front door of the trailer also supported a finding of unlawful entry.  Furthermore, evidence was presented that both sets of Ferguson's car keys were missing, as well as the car, *id.* at 106, 188, 252, 368-69; surveillance videos showed Petitioner driving Ferguson's car in the early morning hours of November 22, 2012, *id.* at 371, 376-82, 393-412; and Petitioner's DNA was found on the steering wheel and his fingerprints were found on the rearview mirror of the car, *id.* at 713-24, 967-68.  That Petitioner forcibly stole Ferguson's property was evidenced by the multiple deep stab wounds to Ferguson's torso and back, and the defensive wound to Ferguson's left hand was evidence that she struggled to defend herself against Petitioner's attack.  As to the larceny count, the evidence was sufficient to establish that Petitioner stole Ferguson's vehicle, and Petitioner stipulated at trial that Ferugson owned the 2006 Saturn and that its value exceeded $100.  *Id.* at 1012.

In addition, evidence was presented at trial establishing Petitioner's consciousness of guilt.  On November 30, 2012, Petitioner's sister, Cynthia Curran, sent Petitioner a text message telling him that the police had stopped by her house and asked whether Petitioner had been with her on Thanksgiving.  *Id.* at 926.  Petitioner sent Cynthia a text message in response, telling her to lie to the police and say that she had picked him up at 9:00 p.m. on November 21, 2012, and dropped him back home at 6:00 p.m. the next day, which was Thanksgiving Day.  *Id.* at 621-23, 927.  Petitioner sent a follow-up text to Cynthia saying, "something happened and stupid ass me told them I went there and you picked me up." *Id.* at 928.  Cynthia initially lied to the New York State Police and told them that Petitioner was at her house from the late evening of November 21 through Thanksgiving Day, but then, a few weeks later, she told the police the truth, which was that she did not see Petitioner during that time period.  *Id.* at 618-21.  Moreover, Petitioner fled

19

from Hyde Park to Tampa, where his other sister, Samantha Curran, lived, and where he was ultimately found and taken into custody. *Id.* at 465-67, 486.

In sum, viewing the evidence in the light most favorable to the prosecution, the evidence presented at trial was certainly sufficient for a rational trier of fact to find the essential elements of all six counts of conviction beyond a reasonable doubt. Despite Petitioner's argument to the contrary, the fact that the evidence supporting his conviction was circumstantial does not diminish its sufficiency. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence[.]"). Applying the "twice-deferential standard" of federal habeas review, the Court finds that it was not objectively unreasonable for the Appellate Division to reject Petitioner's legal insufficiency claim. Accordingly, this claim for habeas relief should be DENIED.

### 2. Weight of the Evidence

As part of his first ground for habeas relief Petitioner also contends that the verdict was against the weight of the evidence. "A federal habeas court cannot address 'weight of the evidence' claims because a challenge to the verdict based on the weight of the evidence is different from one based on the sufficiency of the evidence. Specifically, the weight of the evidence argument is a pure state law claim whereas a legal sufficiency claim is based on federal due process principles." *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (cleaned up); *see McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]"); *May v. Griffin*, No. 17-cv-6319 (KMK) (JCM), 2021 WL 5450731, at *15 (S.D.N.Y. Mar. 15, 2021) ("Petitioner's claim that the verdict was against the weight of the evidence does not raise a

federal question appropriate for habeas review.") (quotation marks omitted), *adopted by* 2021 WL 5450346 (S.D.N.Y. Nov. 19, 2021).

Accordingly, this claim is not cognizable on habeas review and should be DENIED.

### B.    Petitioner's Claims Regarding the Evidence of the Prior Assault and the Flight Charge are Barred from Habeas Review (Grounds Two and Four)

As his second ground for habeas relief, Petitioner claims that he was deprived of his due process right to a fair trial when the court allowed in evidence that before the murder, Petitioner allegedly assaulted the mother of his children by throwing a night light in her face. Pet. at 7; *see also id.* at 40-48 (pages 35-43 of Petitioner's brief on direct appeal). Petitioner raised this claim on direct appeal, and the Appellate Division, Second Department rejected it, holding that

> [Petitioner's] contention that the trial court improperly admitted evidence that he threw a "dream light" at his former paramour, striking her in the eye, as part of the sequence of events that precipitated the murder of the victim, is unpreserved for appellate review because he did not object to the court's curative instruction as given and did not request any additional curative instructions.

*People v. Curran*, 139 A.D.3d at 1086 (citing, *inter alia*, N.Y. Crim. Proc. Law § 470.05(2)).[14]

The Appellate Division's holding, which relied on a section of New York's Criminal Procedure

---

[14] The Appellate Division then added that

> [i]n any event, the determination of whether to admit such evidence lies within the sound discretion of the trial court. The trial court providently exercised its discretion in admitting the evidence, since it was probative with respect to completing the narrative of the events leading up to the murder of the victim and was not unduly prejudicial. Moreover, the court gave a sufficient limiting instruction regarding the use the jury could make of the evidence, which the jury is presumed to have followed.

*People v. Curran*, 139 A.D.3d at 1086-87 (cleaned up).

Law commonly referred to as the "contemporaneous objection rule,"[15] was thus "based on independent and adequate state law foreclosing federal habeas relief." *Carson v. McGuinness*, No. 23-cv-6776 (KMK) (JCM), 2024 WL 5469225, at *9 (S.D.N.Y. Aug. 28, 2024). "A state court procedural default will bar habeas review when the last state court rendering judgment in the case clearly and expressly states that its judgment rests on a state procedural bar even where the state court has also ruled in the alternative on the merits of the federal claim." *Id.* (quoting *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)) (cleaned up). "The Second Circuit made clear in *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011), that New York's contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Id.* at *10 (cleaned up). "As such, Courts have consistently found that a state court's invocation of the contemporaneous objection rule precludes federal habeas review." *Id.* (citing cases).

As his fourth ground for habeas relief, Petitioner claims that he was deprived of his due process right to a fair trial when the court gave a flight charge and invited the jury to infer consciousness of guilt. Pet. at 10; *see also id.* at 51-58 (pages 49-56 of Petitioner's brief on direct appeal). Petitioner raised this claim on direct appeal, and the Appellate Division, Second Department rejected it, holding that while Petitioner "contends that the court's consciousness of guilt charge lacked evidentiary support," Petitioner "failed to preserve this issue for appellate review." *People v. Curran*, 139 A.D.3d at 1087. In the alternative, it held that "[i]n any event, notwithstanding [Petitioner's] contrary assertions, flight need not take place immediately following an act of misconduct in order to constitute evidence of consciousness of guilt." *Id.*

---

[15] This provision of New York's Criminal Procedure Law states that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2).

Although the Appellate Division did not explain the basis for finding that this claim was unpreserved, the Court considers this holding also to be based on the procedural bar of the contemporaneous objection rule since the rule was cited both by Petitioner and the prosecution in their briefs on direct appeal. *See* App. Br. at 51 ("By objecting, [Petitioner] preserved this error, as a matter of law, for appellate review." (citing N.Y. Crim. Proc. Law § 470.05(2))); Resp. Ex. 7 (ECF No. 7-19) at 55 ("[Petitioner] did not object to the charge as given to the jury (T1179), and thus any challenge to the propriety of the instructions have [*sic*] not been preserved for review by this Court." (citing N.Y. Crim. Proc. Law § 470.05(2))); *see also Figueroa v. Grenier*, No. 02-cv-5444 (DAB) (GWG), 2005 WL 249001, at *8 (S.D.N.Y. Feb. 3, 2005) ("The prosecution relied on [N.Y. Crim. Proc. Law § 470.05(2)] in arguing on the direct appeal that the claim was unpreserved . . . . The appellate court's statement that [the petitioner's] claims were 'unpreserved' is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue."); *cf. Kelly v. Lee*, No. 11-cv-3903 (CBA), 2014 WL 4699952, at *5 n.2 (E.D.N.Y. Sept. 22, 2014) ("Although the Appellate Division did not cite to a statute or case law in finding [the petitioner's] *Apprendi* claim unpreserved, the Court assumes this ruling was based on the contemporaneous objection rule.").

Federal habeas review of these claims is therefore procedurally barred unless Petitioner can "show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Thomas v. Kirkpatrick*, No. 18-cv-51 (CS) (JCM), 2023 WL 5510116, at *7 (S.D.N.Y. Aug. 25, 2023) (quoting *Harris*, 489 U.S. at 262) (cleaned up). "The cause requirement is met if some objective factor, external to the petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Id.* (cleaned up). "The petitioner may establish prejudice by showing that the

23

alleged trial errors substantially disadvantage[d] the petitioner and infected his entire trial with error of constitutional dimensions." *Id.* (cleaned up). "A fundamental miscarriage of justice is established where a petitioner demonstrates that he is actually innocent of the crime for which he has been convicted." *Id.* (quotation marks omitted). A claim of actual innocence "must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). To be "credible," an actual innocence claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and citing *House v. Bell*, 547 U.S. 518, 537 (2006)). For such a claim to be "compelling," "the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

Here, Petitioner cannot overcome the procedural bar to review of his claims. He has not even attempted to demonstrate cause for the default, and "[w]here a petitioner is unable to show cause, the Court need not consider actual prejudice." *Castillo v. Walsh*, 443 F. Supp. 2d 557, 563 (S.D.N.Y. 2006). Meanwhile, the only lines of argument before this Court that potentially could be construed as an assertion of innocence are Petitioner's challenges to the DNA evidence that was presented at trial and his trial counsel's strategy and approach with respect to that evidence. But this is not "new reliable evidence" to support a claim of actual innocence, and therefore Petitioner has failed to put forth a credible and compelling claim that he is actually innocent. Moreover, Petitioner's many requests for an evidentiary hearing—grounded in allegations that his trial counsel provided ineffective assistance with respect to the DNA

evidence presented at trial—are based on no more than Petitioner's speculation that the DNA evidence was unreliable and that his counsel did not effectively challenge it. *See* ECF Nos. 41, 47, 48, 52, 53. Again, this is not new evidence of actual innocence, and Petitioner's attempt to stay this proceeding so that he could exhaust this ineffective assistance of counsel claim was rejected by Magistrate Judge Smith. *See* ECF No. 34.[16]

Accordingly, these claims are not cognizable on habeas review and should be DENIED.

### C.      Petitioner's Claim Regarding the Admission of the Autopsy Photograph (Ground Three)

Petitioner's remaining ground for habeas relief is that he was deprived of his due process right to a fair trial when, over his counsel's objection, the trial court admitted into evidence a graphic autopsy photograph of the victim. Pet. at 8-9; *see also id.* at 46-50 (pages 44-48 of Petitioner's brief on direct appeal). In rejecting this claim on direct appeal, the Appellate Division, Second Department held that "[c]ontrary to [Petitioner's] contention, the trial court providently exercised its discretion in admitting into evidence an autopsy photograph of the victim's left hand. The photograph was neither excessively gruesome nor introduced for the sole purpose of arousing the jurors' passions and prejudicing [Petitioner]." *People v. Curran*, 139 A.D.3d at 1087.

At trial, during the testimony of New York State Police Investigator Shannon Alpert, who witnessed Ferguson's autopsy and took photographs, the prosecution sought to introduce an autopsy photograph of Ferguson's left hand. The photograph depicted a laceration on the hand

---

[16] Magistrate Judge Smith denied the motion for a stay, first and foremost, because Petitioner could not amend the Petition to add such a claim since it was time-barred and did not relate back to the original Petition. ECF No. 34 at 4-7. For the same reasons, Petitioner's multiple subsequent hearing requests should be denied, as they are all in furtherance of developing a claim that was (i) never included in the Petition, (ii) is time-barred, and (iii) does not relate back to the Petition.

above the thumb area, which Dr. Dennis Chute, the Deputy Medical Examiner for Dutchess

County, who performed Ferguson's autopsy, would testify was, in his opinion, a defensive

wound. Tr. at 449-5l. While the photograph also showed fingers missing,[17] the prosecution

maintained that it was the least offensive photograph available for this purpose. *Id.* at 449-50,

530. Defense counsel objected to the photograph, claiming it was graphic and prejudicial to

Petitioner. *Id.* at 449-50. The court stated that although it was disturbing, if it was a photograph

of a defensive wound, then it was relevant and would be admissible subject to the testimony of

Dr. Chute. *Id.* at 451-52.

Dr. Chute, in turn, testified that Ferguson sustained a cutting wound, made by a sharp

instrument, on the back of her left hand. *Id.* at 511. He described this wound as "potentially a

defensive wound." *Id.* at 512. According to Dr. Chute, a defensive wound is an injury sustained

when a person attempts to block a blow or ward off a blow from a sharp instrument. *Id.* at 511.

At the conclusion of Dr. Chute's testimony, the court gave the following instruction to

the jury regarding the autopsy photographs:

> Members of the jury, let me briefly call to your attention certain
> photographs that are received in Evidence. As you know, these
> photographs are of the victim, Laurie Ferguson. You have viewed them.
> You may find them to be grim, unsettling, perhaps unpleasant; however,
> you have sworn to determine this case solely upon the facts. They have
> been admitted in Evidence because these photographs are relevant to the
> issues of whether the victim was wounded in the act of defending herself
> in the manner in which she died. I now emphasize to you that you are not
> to dwell upon these photographs. As you view them, which you already
> have done, please do so quickly, calmly and unemotionally. I charge you
> you must make your determination of the weight, if any, that you see fit to
> give to these photographs objectively without emotion and without
> prejudice.

---

[17] Hyde Park Police Sergeant Bradley Moore testified that when he and Hyde Park Police Officer Montalto discovered Ferguson's body in the closet, the fingers and thumb of one of her hands were missing, and Ferguson's two dogs were on top of her, chewing her hand. Tr. at 183-84, 186.

*Id.* at 536-37.  The jurors acknowledged that they understood the charge.  *Id.* at 537.

"Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness."  *Carrino v. Lee*, No. 21-cv-5909 (VB) (PED), 2023 WL 4304799, at *10 (S.D.N.Y. Jan. 31, 2023) (quotation marks omitted), *adopted sub nom. Carrino v. Eckert*, 2023 WL 4296182 (S.D.N.Y. June 30, 2023).  "A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial."  *Id.* (quotation marks omitted).  "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  *Id.* (quotation marks omitted).

On direct appeal, Petitioner argued that admitting this photograph in evidence was an "error of state law" that rose to the level of a constitutional violation

> because the photograph simultaneously proved no material fact, yet aroused sympathy for the victim and caused prejudice against [Petitioner].
>
> Because the entire case rested solely on the circumstantial identity of the perpetrator, the introduction of this gruesome photograph, admitted to prove the non-issue of defensive wounds, had a substantial and injurious effect or influence in determining the jury's verdict, and thus violated the defendant's right to due process.

App. Br. at 47 n.5 (cleaned up).

Petitioner's argument does not suffice to carry his burden to show that any arguable error in admitting the autopsy photograph in evidence "was so pervasive that it denied [him] a fundamentally fair trial."  *Carrino*, 2023 WL 4304799, at *10.  "Under New York law,

27

photographs are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered." *Silva v. Keyser*, 271 F. Supp. 3d 527, 541 (S.D.N.Y. 2017) (quotation marks omitted). "Photographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant." *Id.* (quotation marks omitted). Here, the trial court found the autopsy photograph of Ferguson's hand to be relevant "to the issues of whether the victim was wounded in the act of defending herself in the manner in which she died." Tr. at 536-37. The photograph served to illustrate and corroborate Dr. Chute's testimony about the autopsy finding of a potential defensive wound that Ferguson sustained while being stabbed with a sharp knife, and was probative on the issue of whether Petitioner acted with intent to cause Ferguson's death, an essential element of murder in the second degree under New York Penal Law § 125.25(1). Moreover, the admission of the autopsy photograph in question was not a deprivation of due process under the Fourteenth Amendment to the U.S. Constitution because it did not "provide the basis for conviction" or "remove a reasonable doubt that would have existed on the record without it." *Carrino*, 2023 WL 4304799, at *11. As explained in Section II.A.1, *supra*, there was substantial other evidence to support the jury's determination as to Petitioner's guilt.

Accordingly, the Appellate Division's rejection of this argument on direct appeal was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state courts, and this claim for habeas relief therefore also should be DENIED.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the Petition be DENIED in its entirety.

I also respectfully recommend that Petitioner's requests for an evidentiary hearing, *see* ECF Nos. 41, 47, 48, 52, 53, be denied as they do not relate to any claims that have been raised, or that ever could be raised, in the Petition.

As the Petition presents no questions of substance for appellate review, I further respectfully recommend that a certificate of probable cause should not issue, *see Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90, 91 (2d Cir. 1979) (*per curiam*), and that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438 (1962).

**NOTICE**

Pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have 14 days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, must be filed with the Clerk of Court with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

29

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 787 F.3d 93, 102 (2d Cir. 2015).

Dated: December 30, 2025
White Plains, New York

Respectfully submitted,

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Report and Recommendation has been mailed by Chambers to the *pro se* Petitioner at Green Haven Correctional Facility, which, according to the New York State Department of Corrections and Community Supervision website, is the facility where he is currently housed. *See Incarcerated Lookup*, Department of Corrections and Community Supervision (Justin T. Curran, DIN 14A1061) (last visited 12/30/25) [https://perma.cc/E78L-8CTQ]. Petitioner's address of record on the docket is Sullivan Correctional Facility, but that facility was closed on November 6, 2024. *See Fiscal Year 2024-2025 Correctional Facility Closures*, Department of Corrections and Community Supervision (last visited 12/30/25) [https://perma.cc/95WK-8TC3]. The Clerk of Court is respectfully directed to update Petitioner's address of record on the docket as follows: 14-A-1061; Green Haven Correctional Facility; 594 Route 216; Stormville, NY 12582-0010.